# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

ROY LEN ROGERS,       )
                           )
      Petitioner,        )
                           )
v.                         )      No.    1:18-CV-00207-HSM-CHS
                           )
WILLIAM K. HAMPTON,    )
                           )
      Respondent.     )
                           )

## MEMORANDUM OPINION

Roy Len Rogers, Petitioner, has pro se filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, following his convictions for the reckless endangerment of Vanessa Collett, his ex-wife, and the first- and second-degree murder of Gregory Keith Brown, whom Mrs. Collett was dating [Doc. 1]. After reviewing the parties' filings and the relevant state court record, the Court has determined that Petitioner is not entitled to relief under §2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the reasons set forth below, the §2254 Petition is **DENIED**, and this matter will be **DISMISSED**.

## I.    BACKGROUND

In March 2007, Petitioner and Mrs. Collett separated after a three-month marriage and a preceding two-month courtship. *Rogers v. State*, No. E2017-00445-CCA-R3-PC, 2018 Tenn. Crim. App. LEXIS 305, at *2 (Tenn. Crim. App. 2018) ("*Rogers III*"). Mrs. Collett stated that the marriage ended due to Petitioner's "controlling and threatening" behavior, which unfortunately continued after their separation. *Id*. at *2-3. In the month following the couple's separation, Mrs. Collett and her daughter, Cierra Bennett, moved in with Mrs. Collett's mother. *Id*. Petitioner

called Mrs. Collett incessantly, "sometimes… hundreds of [times] a day," drove by the residence and knocked on the door, and followed her on many occasions. *Id*. at *3. Testimony from Mrs. Collett, Ms. Bennett, Mrs. Collett's mother, and her sister Dottie Hawkins established that Petitioner's threats included stating that if Petitioner could not have Mrs. Collett no one could, calling Mrs. Collett and saying "dead… D-E-A-D," and telling her family members that Mrs. Collett was as good as dead or that he was on his way to kill her. *Id*. at *3, 6-7. Even after Mrs. Collett changed her phone number, moved into a different apartment with Ms. Bennett, and filed for an Order of Protection, Petitioner's threats and harassment continued. *Id*. at *3.

In June 2007, Mrs. Collett began dating the victim, Gregory Keith Brown, at which point Petitioner also began calling Mr. Brown several times per day. *Id*. Police later found evidence that on July 12, Petitioner also took photos of Mr. Brown's car outside of Mrs. Collett's residence. *Id*. at *11.

On July 28, 2007, while watching television, Mrs. Collett and her daughter heard their windchime, which a domestic violence counselor had recommended they place on the porch to announce intruders. *Id*. at *4. Mrs. Collett stated that after Ms. Bennett "looked through the door's peephole and stated, 'Mama, it's Len[,]'" she called 9-1-1 and reported the prowler, without telling the operator that it was Petitioner. *Id*. By the time the police arrived, Petitioner was gone. *Id*.

The next evening between 11:15 and 11:30 p.m., after dinner and a visit with Mrs. Collett's son, during which Mr. Brown had ignored "three or four" calls from Petitioner, Mrs. Collett, Mr. Brown, and Ms. Bennett returned to Mrs. Collett's residence. *Id*. at *5. Mrs. Collett testified that Mr. Brown had both made arrangements to stay with her and brought a .380 handgun to give to her for her protection. *Id*. Mrs. Collett and Mr. Brown were in Mrs. Collett's bedroom packing a bag for his business trip the next day when Mrs. Collett heard a "pop" and "felt a burning on [her]

left hand and the side of [her] face." *Id*. at *5-6. When she realized that the victim had been shot, she ran to her daughter's room to call 9-1-1; she originally reported that the victim had shot himself. *Id*. at *6.

However, investigating officers found that the .380 had not been unholstered or fired. *State v. Roy Len Rogers*, No. 2011-02529-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 814, at *67 (Tenn. Crim. App. 2013) ("*Rogers I*"). Instead, from outside Mrs. Collett's home, Detective Chris Hall "discovered a bullet hole in Mrs. Collett's bedroom window as well as a nine-millimeter shell casing on the ground outside the window." *Rogers III*, at *8. He noted that there was "moss…mashed down" as if "someone had been standing… at the edge of the window" and that, due to a gap in the window covering, from this vantage point, he had an unobstructed view into the bedroom. *Id*. at *8-9. Detective Hall also found tire tracks, not sufficiently detailed but notably with three longitudinal stripes, and fresh marks indicating that a vehicle had "bottomed out," approximately 100 feet from Mrs. Collett's apartment. *Id*. at *9.

At approximately 2 a.m., officers arrived at Petitioner's home, where he opened the door wearing pajama bottoms and no shirt and told them he was aware of the shooting. *Rogers I*, at *25. In the early morning hours of July 30, Petitioner was brought in for questioning by the TBI. *Rogers III*, at *9. He told the agent that his children were staying overnight with his parents because his air-conditioning unit was broken; he then asked to speak with an attorney at which point the interview ceased. *Id*. at *9-10. After obtaining a search warrant, officers found two nine-millimeter shell casings on Petitioner's property, which after testing were shown to be manufactured by the same company and fired by the same firearm as the shell casing found at Mrs.

Collett's residence.[1]  *Id.* at *10.  The officers also took Petitioner's 1993 Honda Civic from the property for testing, which showed that the tires on the vehicle had three longitudinal stripes and that there were fresh scrape marks on the bottom of the vehicle, as if the vehicle had "bottomed out."  *Id.* at *11.

An investigation into Petitioner's phone activity revealed that Petitioner made fifteen phone calls to the victim between 9:08 a.m. and 10:05 p.m. the day of the shooting.  *Id.* at *13.  It likewise revealed a conspicuous gap in Petitioner's phone calls around the time of the shooting. Petitioner made outgoing phone calls from his cell phone at 11:08 p.m. and from his landline at 11:20 p.m.  *Id.*  He did not make further outgoing calls until a 12:09 a.m. call from his cell phone and a 12:16 a.m. call from his home phone; each of these calls were made to Daniel Witherow, and during the later telephone call Petitioner was aware of the shooting and expressed a desire to record the time of the calls for an alibi.  *Id.* at *12-13, 14.  Likewise, Petitioner did not answer calls to his cell phone at 12:05 a.m. or to his home phone at 12:10 a.m. from his brother, Russell Rogers, a Rhea County Sheriff's Department ("RCSD") officer who had heard of the shooting and feared Petitioner's involvement.  *Id.* at *12.  Instead, Petitioner called Mr. Rogers back at 12:12 a.m. from his cell phone.  *Id.*

The police measured the distance and clocked the amount of time it would take Petitioner to reach Mrs. Collett's apartment.  *Id.* at *9.  They determined that the residences were approximately eight miles apart, and that when driving the speed limit, the travel took 10 minutes, but that when driving 10 – 15 miles per hour over the speed limit, the distance could be covered in approximately seven minutes.  *Id.*

---

[1] It was during this search that officers also found the camera with photographs taken of Mr. Brown's vehicle in front of Mrs. Collett's residence, referenced above.

It was later discovered that the pawn shop Petitioner worked at during the marriage and for a brief period of time after the couple's separation was missing a 9mm firearm. *Id*. at *10. The pistol had been taken in on March 26, 2007, after the couple had separated, and Petitioner had processed the weapon. *Id*. There was a hold posted on the weapon in April, meaning the item was not for resale, and Petitioner was again the employee who notated this in the computer system. *Id*. at *10-11. It was determined that this weapon was one of the many possible options to have fired the shell casings found at the scene and at Petitioner's home. *Id*. at *10. Petitioner left his employment at the pawn shop that same April. *Id*.

A Rhea County Grand Jury charged Petitioner of one count each first-degree premeditated murder and first-degree felony murder for the shooting death of Gregory Brown, and one count of attempted first-degree murder of Vanessa Collett. *Id*. at *1-2. Petitioner was then convicted of both first-degree and second-degree murder for the shooting of Mr. Brown[2], and as a lesser-included offense of attempted first degree-murder, reckless endangerment of Mrs. Collett. *Id*. at *2. He was sentenced to life imprisonment with an additional 11 months and 29 days to be served concurrently. *Id*.

Petitioner filed a Direct Appeal alleging that: the evidence was insufficient to support any of his convictions, that the jury's finding of both first- and second- degree murder was inconsistent, that the trial court committed various errors, and that the State suppressed exculpatory information in violation of *Brady v. Maryland* [Doc. 12-18]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed his conviction. *Rogers I*. Petitioner then applied for discretionary review with the Tennessee Supreme Court ("TSC"), which was denied [Doc. 12-26].

---

[2] The trial court merged the first-degree and second-degree murder charges.

Petitioner then filed a petition for state post-conviction relief, which was summarily denied as the post-conviction trial court found that his claims had been addressed on direct appeal [Doc. 12-27 p. 3-24]. On appeal, the TCCA found that when granted the leniency afforded to pro se petitioners, Petitioner had stated a colorable claim under the Post-Conviction Procedure Act and thus remanded Petitioner's petition to the trial court for the appointment of counsel and further proceedings. *Rogers v. State*, No. E2015-00255-CCA-R3-PC, 2015 Tenn. Crim. App. LEXIS 604, at *2 (Tenn. Crim. App. 2015) ("*Rogers II*"). After the appointment of counsel, new briefing, and evidentiary hearings, the post-conviction trial court again denied Petitioner's post-conviction petition on remand [Doc. 12-32 p. 124-38]. The TCCA affirmed the denial of post-conviction relief. *Rogers III*. Petitioner again applied for discretionary review with the TSC, which was denied [Docs. 12-50 and 12-51].

Petitioner then filed this habeas petition in which he alleges the ineffective assistance of counsel, the insufficiency of the evidence as to his convictions, and various trial court errors [Doc. 1].

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. §2254, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is intentionally difficult to meet. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted). The AEDPA requires heightened respect for both state court legal judgments and factual findings. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Under the unreasonable application clause, the proper inquiry is whether the state court's decision was "objectively unreasonable," and not simply erroneous or incorrect. *Williams v. Taylor*, 529 U.S. 362, 409 – 11 (2000). Where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Habeas relief is limited not only by the high deference granted to state court judgments and findings, but also by the limitations on which claims federal courts may address. Federal courts may only grant habeas relief on claims by state prisoners when the prisoner has exhausted the remedies available in state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Generally, exhaustion requires a petitioner to "fairly present" his federal claims to all levels of the state appellate system, including the state's highest court, to ensure that the state was given a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *Duncan v. Henry*, 513 U.S. 364, 365 – 66 (1995); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *See O'Sullivan*, 526 U.S. at 842. Tennessee has determined that exhaustion is satisfied when the Tennessee Court of Criminal Appeals has denied relief on a claim, regardless of presentation to the Tennessee Supreme Court. Tenn. S. Ct. Rule 39 (Supp. 2001).

To fairly present his claims, it is not enough for a petitioner to rely merely on the presentation of facts that implicate a federal claim or a mirroring state law claim. *Duncan*, 513 U.S. at 365-66. Rather, to satisfy the exhaustion requirements of a federal claim, a petitioner must

provide the state courts with some indication that he is "asserting claims under the United States Constitution," which he may do by (1) relying "on federal cases employing constitutional analysis," (2) relying on "state cases employing constitutional analysis," (3) asserting "the claim in terms so particular as to call to mind a specific constitutional right," or (4) alleging "a pattern of facts well within the mainstream of constitutional litigation." *Duncan*, 513 U.S. at 365-66; *McMeans v. Brigano*, 228 F.3d 674, 680 (6th Cir. 2000); *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney General*, 696 F.2d 186, 193-93 (2nd Cir. 1982). Although exhaustion is deemed necessary, if there are no further state court remedies available to a petitioner, lack of exhaustion will not foreclose merits review by the federal court. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Regardless of exhaustion, a claim may also be foreclosed from review if it has been procedurally defaulted. A claim is procedurally barred if (1) it was never presented to the highest available state court and is now barred from such presentation by a state procedural rule or (2) the state courts were prevented from "reaching the merits of the petitioner's claim" because Petitioner failed to comply with a regularly enforced, "adequate and independent" state procedural rule. *Wallace v. Sexton*, 570 F. App'x. 443, 449 (6th Cir. 2014) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84, 87 (1977)).

## III.    ANALYSIS

### A.  Ineffective Assistance of Counsel

Petitioner's first claim for habeas relief, which encompasses seven sub-claims, is that his trial counsel was ineffective under the Sixth Amendment. He claims that counsel was ineffective for: (1) failing to raise the insufficient description of Petitioner's property included within the

search warrant in his motion to suppress the evidence found during the search, (2) failing to object to Vanessa Collett's testimony as to the victim's purchase of a gun for her, (3) failing to take any steps to address the testimony of Dottie Hawkins as to Petitioner's violent character, (4) opening the door to testimony regarding Petitioner's violent character, (5) failing to include the recording of the 9-1-1 call as part of the record on appeal, and (6) failing to raise the issue of domestic violence during voir dire. His final claim, (7), is that the cumulative effect of counsel's errors deprived Petitioner of a fair trial. Each of these claims has been exhausted and is not procedurally defaulted and will, as such, be evaluated on its merits.

To successfully prove that counsel was constitutionally ineffective, a defendant must establish (1) that counsel's performance was deficient such that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment," and (2) that counsel's "performance prejudiced the defense… so as to deprive the defendant of a fair trial" and undermined the reliability of trial results. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

The Supreme Court has clarified that when a federal court reviews a state court's application of *Strickland*, which sets its own high bar for claims, "establishing that a state court's application was unreasonable under §2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "In those circumstances, the question before the habeas court is 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.*; *See Jackson v. Houk*, 687 F.3d 723,

740-41 (6th Cir. 2012) (stating the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .").

### 1. Warrant Issues

Petitioner claims that the evidence found during the search of his home should have been suppressed because the search warrant did not contain a "particular description of the place to be searched," and that trial counsel was ineffective for not including this deficiency in his Motion to Suppress [Doc. 1 p. 16-19, 20-24]. Petitioner alleges that the warrant did not properly include, incorporate, or attach the description of the property, because the description was included in an exhibit attached to the affidavit and not in the affidavit itself, and that the substance of the description is ambiguous in violation of the Fourth Amendment [*Id.*]. He claims that although counsel attempted to raise this issue in his Motion for New Trial, it was treated as waived because he did not raise it in his Motion to Suppress prior to trial, and thus counsel was ineffective [*Id.*]. The Respondent contends that both the manner of the description's inclusion and its substance were appropriate, and that it was not unreasonable for the TCCA to find that trial counsel was not then ineffective for failing to include this issue in his motion to suppress [Doc. 15 p. 19-20]. The Court finds that the TCCA did not unreasonably apply *Strickland* to find that counsel was not constitutionally ineffective.

The search warrant obtained to authorize the search of Petitioner's property included the following language:

> Proof having been made before me and reduced to writing and sworn to by Chris Hall, Investigator with the Rhea County Sheriff's Department *whose affidavit is attached hereto and is hereby referred to for its contents and said contents incorporated herein*, there is probable cause to believe that Len Rogers shot and killed Gregory Keith Brown at approximately the midnight hour of July 29, July 30, 2007, and that evidence of such crime … is being concealed *on the premises of Len Rogers more particularly*

> *described in Exhibit "A" to the Affidavit and made part of this*
> *Warrant as if copied verbatim herein* and specifically Len Rogers's
> 1993 Blue Honda Civic with License plate number 087-DVQ in
> Rhea County, Tennessee, and from proof it is adjudged that the
> offense of Criminal Homicide has been committed by the defendant
> Len Rogers and that the evidence of such is on the premises
> hereinbefore described, and you are hereby commanded in the name
> of the State of Tennessee to make an immediate search of the above
> named person, the above described property and automobile for
> evidence of criminal homicide day or night of with any outbuildings,
> containers, trailers, or outbuildings under the control of the
> defendant, Len Rogers.

[Doc. 12-16 p. 15] (emphasis added). The underlying sworn affidavit requests a warrant
"authorizing the search of the person of Len Rogers, along with his residence described in Exhibit
'A', including any and all vehicles… out buildings, trailers and storage containers found on said
property…" [Doc. 12-16 p. 17]. Exhibit A, which was attached to the warrant, gave detailed
directions to Petitioner's residence, described his home, and named Petitioner as the owner or
controller of the property [Doc. 12-16 p. 18].

Petitioner first challenged the search warrant in his Motion to Suppress and later in his
Motion for New Trial but did not include a challenge to the description of the property included
within the affidavit in either [Doc. 12-1 p. 89-90]. On the second appeal of the dismissal of his
post-conviction petition, the TCCA ruled that Petitioner had not shown "how trial counsel's failure
to seek suppression of the search warrant on the basis of an alleged insufficient description of the
petitioner's property would have affected the outcome of his trial." *Rogers III*, at *31. To obtain
federal habeas relief on this claim, this Court would not only have to find that trial counsel was
ineffective under *Strickland's* two-prong deficiency and prejudice test, but also that the TCCA had
no reasonable basis for this holding. *Harrington*, 562 U.S. at 105.

Under federal interpretation, warrants may be properly read to include the contents of
incorporated and attached documents. *See Baranski v. Fifteen Unknown Agents of the BATF*, 452

F.3d 433, 440 (6th Cir. 2006).  A warrant's description of the property to be searched is adequate "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *United States v. Montgomery*, 395 F. App'x. 177, 187 (6th Cir. 2010) (quoting *Steele v. United States*, 267 U.S. 498, 503 (1925)).  Tennessee courts have adopted a similar view.  *State v. Mack*, 188 S.W.3d 164, 171(Tenn. Crim. App. 2004) (citing *State v. Lowe*, 949 S.W.2d 300, 304 (Tenn. Crim. App. 1996) (citing *United States v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir. 1991))).

The warrant included clear language incorporating not only the affidavit, which itself referenced Exhibit A, but also separately incorporated Exhibit A.  Both the affidavit and the exhibit were attached to the search warrant, and both were signed by the judge.  Petitioner has not pointed to any precedent, nor is the Court aware of any, distinguishing between incorporating an affidavit, as allowed in both federal and Tennessee courts, and incorporating an affidavit along with accompanying exhibits.  As to Petitioner's argument regarding the substance of Exhibit A, the language in the exhibit contained specific directions, a physical description (including the cars expected to be on the property), and it named the Petitioner as the owner.  Petitioner has not pointed to any precedent establishing that such a description is inadequate, nor has he given any indication as to what more was needed to sufficiently describe his property.  In short, as the TCCA ruled, because it is not clear that the warrant was at all deficient in its description, there are no grounds on which to determine that counsel's failure to seek suppression of the evidence on this issue would have affected the outcome of trial.

Counsel raised many claims in his Motion to Suppress the evidence obtained pursuant to the search warrant, and he will not be faulted for failing to bring forth one issue, particularly where Petitioner points to no case law establishing that there was any merit to this argument.  *See O'Hara*

*v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007). Accordingly, for the reasons set forth above, the Court finds neither deficiency nor prejudice, nor that the TCCA was unreasonable for finding none.

## 2. Gun Purchase

Petitioner claims that trial counsel was ineffective for failing to object to speculative, hearsay testimony from Mrs. Collett that the victim purchased a pistol for her for self-protection because of the threats she received from Petitioner [Doc. 1 p. 24-27]. The State responds that trial counsel made a reasonable strategic decision not to object to this testimony as (1) it was not based on the words of Mr. Brown, but on his actions, and (2) objection could have laid a foundation for additional evidence on this point, which would have been detrimental to Petitioner [Doc. 15 p. 20-22]. This Court holds that the TCCA was reasonable in finding that counsel's performance satisfied constitutional requirements.

At trial, Mrs. Collett testified about the .380 pistol in her bedroom on the evening of the shooting. On direct examination, the State engaged Mrs. Collett in the following line of questioning:

> Q. … Now, let me ask you, right before we get to that, had Mr. Brown been showing you some item to help you with protection?
> A. Yes.
> Q. What was that item?
> A. Before we had went into the bedroom, he had brought a little small handgun.
> Q. Okay. Do you even know what kind of caliber handgun that was?
> A. I have no idea.
> Q. Okay. Was this handgun in something?
> A. It was in a black holster.
> Q. Black holster, okay. And why was he giving you this handgun?
> A. Because Mr. Rogers had threatened me.
> Q. Okay. And this was for protection against Mr. Rogers if he came back to the apartment like your daughter saw him the night before?
> A. Right.
> …

[Doc. 12-35 p. 98]. Trial counsel made no objection to this line of questioning [*Id.*]. At post-conviction hearings, trial counsel testified that he did not object to this testimony (1) because it was not objectionable hearsay, as it was based on what the victim had done and not what he had said, and (2) he was concerned "that an objection would have resulted in the State's laying a foundation for the testimony and would have potentially led to Mrs. Collett expanding upon her testimony to include things counsel had sought to exclude." *Rogers III*, at *17.

The TCCA reasoned that strategic decisions by counsel made after thoughtful preparation are virtually unchallengeable. *Strickland v. Washington*, 466 U.S. at 690-91; *see Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004). At post-conviction hearings, trial counsel offered many strategic explanations for not objecting to this testimony, chief amongst them that it was unclear that the testimony was in fact hearsay under the Tennessee Rules of Evidence. The TCCA then found that this was a "reasonably based trial strategy" that it would not second-guess. *Rogers III*, at *30.

It would be difficult to prove counsel deficient for failing to object to one comment, particularly when objection would draw attention to the damaging testimony. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010). "[A]ny single failure to object [to closing arguments] usually cannot be said to have been error . . . . [D]efense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundgren v. Mitchell*, 440 F.3d 754, 774-75 (6th Cir. 2006).

The Court cannot find that there was no reasonable basis on which the TCCA could have made such a finding. Counsel was not objectively unreasonable, such that he was no longer functioning as counsel under the Sixth Amendment, for electing to move past damaging testimony

rather than launch a potentially unsuccessful challenge to it and thus highlight its importance. Petitioner is not entitled to habeas relief on this claim.

### 3. Dottie Hawkins's testimony

Petitioner alleges that trial counsel was ineffective for failing to object or request curative measures when Dottie Hawkins, Mrs. Collett's sister, testified about Petitioner's prior violent acts before his character for peacefulness had been raised, in violation of Tennessee Rule of Evidence 404(a)[3] [Doc. 1 p. 27-28]. The State responded that trial counsel made a reasonable strategic decision to challenge Ms. Hawkins's testimony on cross-examination, rather than objecting, which could have highlighted rather than de-emphasized her testimony [Doc. 15 p. 22-23]. The Court finds that the TCCA's holding that counsel was not deficient was reasonable.

Ms. Hawkins testified at trial that Petitioner had called her between 100 and 150 times to make threats against Mrs. Collett, once told her he was on the way to kill Mrs. Collett, had tried to run her off the road because he believed she was Mrs. Collett, had threatened her with a weapon, and had threatened the life of Ms. Bennett [Doc. 12-36 p. 64-79]. Notably, Ms. Hawkins was not only Mrs. Collett's sister, she was also married to Terry Janow, whom Petitioner attempted to inculpate for the shooting to the police before he was charged and at trial. *Rogers III*, at *8, 14. Trial counsel did not object or ask the court to strike this testimony. Instead, on cross-examination he posed several questions to Ms. Hawkins to determine whether any of these allegations had been previously recorded, or if she had other proof of these assertions [*Id*. at 71-74]. At post-conviction hearings, trial counsel testified that he believed that Ms. Hawkins's answers were generally

---

[3] Petitioner raises this claim under Tenn. R. Evid. 404(a) which prohibits evidence of a character trait in order to prove conformity therewith. However, this testimony appears to fit under 404(b) which prohibits the admission of other crimes, wrongs, or acts to prove that he acted in conformity therewith, but which are admissible for other purposes. *See* Tenn. R. Evid. 404(b).

nonresponsive, and he did not want to call more attention to her testimony. *Rogers III*, at *18. He also testified that Ms. Hawkins was not a particularly credible witness and that she had no evidence to back up these claims. *Id*. at *18. He stated that he believed "the crazier the things that she said, the better off" Petitioner would be [Doc. 12-33 p. 96].

The TCCA found that counsel's decision not to object to Ms. Hawkins's testimony about these prior threats was a "reasonably based trial strategy" that it would not second guess. *Rogers III*, at *30. The Court cannot find that this holding was in clear violation of federal law or precedent. Trial counsel took steps to undermine Ms. Hawkins's testimony while refraining from opening the door to additional evidence on these points. The Court is not in a place to assess the credibility of witnesses and will not second-guess counsel's assertion that this witness was less than credible and that it was best to move past her testimony. Petitioner is not entitled to habeas relief on this claim.

### 4. Petitioner's Character for Violence

Petitioner alleges that trial counsel was ineffective for presenting testimony to establish Petitioner's character for peacefulness, which then "inadvertently" opened the door to state rebuttal demonstrating the Petitioner's character for violent and possessive behavior, which was not otherwise admissible [Doc. 1 p. 28-31]. The State responds that this was an intentional tactical decision by the defense team intended to form the basis for the "theme" of defense and does not then constitute the ineffective assistance of counsel [Doc. 15 p. 23-25]. The Court finds that the TCCA was not objectively unreasonable in determining that counsel was not deficient.

At trial, counsel introduced the testimony of various witnesses, including Petitioner's pastor, to establish Petitioner's character for peacefulness. *Rogers III*, at *24. The State then introduced the testimony of Karen Zimmerly, a former employer of Petitioner, who testified that

Petitioner had previously threatened to kill Mrs. Holly Peak, Petitioner's ex-wife, and testimony by Mrs. Peak herself indicating that Petitioner exhibited the same behaviors of driving by and calling her after their separation, telling her that if he could not have her no one could, and that she also had to seek an Order of Protection against him. *Rogers I*, at *8-9. At post-conviction hearings, trial counsel testified that this testimony was unlikely to have come in had he not opened the door to it [Doc. 12-33 p. 68]. He also testified that he did not believe that either of these witnesses had much credibility, and that some information elicited from them was actually favorable to Petitioner, such as Ms. Peak's conceding to Petitioner's sole custody of the couple's children and that Petitioner never actually acted on any of his threats [*Id*. at p. 68-69]. Trial counsel also admitted that it was an absolutely conscious decision to introduce testimony regarding Petitioner's lack of violence and character for peacefulness in order to establish a theme [*Id*. at p. 98]. He also testified that he was not aware of any issues with Ms. Zimmerly or anyone else until he learned of the State's intention to call her [*Id*.]. The TCCA ruled that, like counsel's other decisions, this was based on reasonable trial strategy. *Rogers III*, at *30-31.

In this case, regardless of the testimony of Ms. Zimmerly and Ms. Peak, the prosecution had thorough testimony and evidence from which to imply Petitioner's character for violence or, at the very least, harassing behavior. The prosecution had painted Petitioner to be an obsessed, unreasonable, and violent man. The decision to bring in testimony to attest to Petitioner's character for peacefulness to contradict this portrayal was not only a reasonable and sound decision, but likely a necessary one. *See Davenport v. Rapelje*, No. 10-13567, 2013 U.S. Dist. LEXIS 74419, at *18-19 (E.D. MI 2013) (noting that opening the door to prejudicial character evidence is reasonable when state has already introduced inapposite evidence.) Even if counsel's decision was deficient, the Court does not find prejudice where the rebuttal witnesses merely presented

evidence that corroborated the other evidence presented by the State that Petitioner was a violently possessive man. The Court cannot find that the state court had no reasonable basis for this decision and Petitioner is not entitled to habeas relief on this claim.

### 5. 9-1-1 Call Recording

Petitioner alleges that trial counsel was ineffective for failing to include the tape recording of Mrs. Collett's 9-1-1 call as part of the record on appeal [Doc.1 p. 31-34]. The State responds that the TCCA correctly concluded on direct appeal that failure to include the recording was harmless because Petitioner could not show that its use would have resulted in a different outcome, and that Petitioner could not establish prejudice where there was overwhelming other evidence against him [Doc. 15 p. 25]. The Court does not find that the TCCA unreasonably applied *Strickland* in finding counsel was not ineffective.

At trial, Mrs. Collett testified about the evening before the shooting, when she and her daughter heard an intruder on her porch. *Rogers III*, at *4. Mrs. Collett said they heard the windchimes on the porch, and that Ms. Bennett looked out the peephole on the door and stated "Mama, it's Len," at which point Mrs. Collett called 9-1-1. *Id.* However, when Mrs. Collett called 9-1-1 she only told the operator there was an intruder, she did not identify the intruder as Petitioner. *Id.* The parties had a lengthy argument about the admissibility of the tape recording that ended in the court recessing for the evening. *Rogers I*, at *73. On return, the court ruled that the transcript of the phone call was admissible, but that the recording was not and allowed defense counsel to introduce the transcript. *Id.* at *73-74. The State attempted to rehabilitate Mrs. Collett by eliciting testimony that she did not personally look out the peep hole and that she could not remember whether she or Ms. Bennett made the 9-1-1 call. *Id.* at *74-75. According to Petitioner, defense counsel did not request again to introduce the 9-1-1 recording or preserve the recording on appeal

as to this issue. However, counsel did again request to introduce the tape, but the court only allowed the transcript to be entered as an exhibit. *Id*. at *70-76.

On Direct Appeal, the TCCA found that the distinction between the admission of the transcript versus the actual tape is "tedious at best." *Id*. at *80. The court noted that Petitioner was able to cross-examine and impeach Mrs. Collett's credibility with the contents of the 9-1-1 call through the transcripts, and the defense was able to use the transcript at substantive evidence. *Id*. It then noted that any error of the trial court was harmless. *Id*. On post-conviction, the TCCA then declined to find counsel ineffective because Petitioner failed to show how the failure to include the recording in the record could have impacted the results of trial. *Rogers III*, at *30-31.

The Court cannot find that the TCCA had no reasonable basis for its determination that counsel was not constitutionally ineffective. Counsel diligently tried to introduce this information and was prohibited from doing so by the trial court. When faced with the trial court's error, he used the means available to him to introduce the contents of the call. As such, counsel did not then fail to function in his role in the adversarial system. The Court agrees with the TCCA that the trial court's error was harmless, as Petitioner cannot demonstrate that including the recording would have had any impact on trial or appeal. Petitioner is not entitled to habeas relief on this claim.

### 6. Voir Dire

Petitioner alleges that trial counsel should have questioned jurors regarding issues with domestic violence during voir dire [Doc. 1 p. 34-36]. The State responds that trial counsel made a strategic choice to question jurors about criminal issues, which should have encompassed domestic violence, without calling undue attention to the issue and was, therefore, not ineffective

[Doc. 15 p. 25-26]. The Court holds that the TCCA was not unreasonable in holding that counsel was not ineffective.

Petitioner's case raised obvious issues of domestic violence. Trial counsel did not, however, question jurors regarding their own experience or biases regarding domestic violence. *Rogers III*, at *17. At post-conviction hearings, trial counsel testified that he did question jurors about whether they had been accused of or the victim of a crime, which should have included domestic violence [Doc. 12-33 p. 59]. He likewise stated that he did not want to introduce this issue and pave the way for further testimony or the admission of additional orders of protection on this point [*Id*.]. He stated that because Petitioner's theme was that he did not do any of this, he did not want to bring in issues of domestic assault or the orders of protection, and he actively wanted to keep those things out of the jury's mind [*Id*.]. The TCCA reasoned that counsel's decision to refrain from questioning potential jurors about domestic violence was a reasonable trial strategy. *Rogers III*, at *30-31.

The Court cannot find that the TCCA's finding was based on unreasonable findings of fact or an unreasonable application of law. Not only did trial counsel have a reasonable strategic explanation for not questioning the jurors about this specific issue, Petitioner has made no showing of prejudice. In short, there is no indication that such a question would have disqualified or raised suspicion as to any juror, or that any juror was biased against the defense. In fact, such a question could have served the opposite were it to be found that one of the jurors was actually biased in favor of the defense because of some domestic violence issue. Petitioner is not entitled to habeas relief on this claim.

### 7. Cumulative Effect

Petitioner contends that the sheer number of errors committed by trial counsel resulted in "the reasonable probability that the culmination of these errors affected the outcome of his case" [Doc. 1 p. 36-37]. The State responds that under Tennessee precedent, because Petitioner fails to establish any individual error, the TCCA was correct in holding that the doctrine of cumulative error did not apply [Doc. 15 p. 26-27]. Further, the TCCA noted that given the overwhelming evidence against Petitioner, he could not establish that but for counsel's alleged errors, the outcome of his trial would have been different [*Id.*].

The TCCA was not unreasonable in rejecting Petitioner's claim of the cumulative effect of counsel's errors when he failed to establish that trial counsel was deficient on any individual claim. Claims of cumulative error are not viable where none of counsel's conduct was determined to be in error. *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002). The TCCA did not unreasonably apply *Strickland* when it determined that, having found no errors on behalf of counsel, Petitioner could not establish that cumulative error review applied. Petitioner is not entitled to habeas relief on this claim.

### B. Insufficiency of the Evidence

Petitioner claims that his convictions were obtained without sufficient evidence to persuade a reasonable jury of his guilt beyond a reasonable doubt [Doc. 1 p. 38-44]. Specifically, he claims that the evidence was insufficient to establish either his identity as the perpetrator or premeditation for the killing of Mr. Brown [*Id.*]. The State contends that there was ample evidence from which the jury could have found Petitioner guilty beyond a reasonable doubt, and that when given the deference ceded to both the jury and the state court, there are no grounds to find that the state court

was "objectively unreasonable" for failing to find that "no rational trier of fact could have agreed with the jury" [Doc. 15 p. 27-34].

To evaluate challenges to the sufficiency of the evidence, federal courts sitting in habeas review analyze "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The courts look to the evidence supporting the conviction with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16. However, because the trier of fact is charged with, and in the best position for, resolving conflicts in testimony, weighing the evidence, and drawing inferences, their verdict will be given deference. *Jackson*, 443 U.S. at 319. As with ineffective assistance of counsel claims, challenges to the sufficiency of the evidence are incredibly difficult for petitioners to succeed on due to the double layer of deference granted to these claims. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Not only is the trier of fact's verdict given deference as detailed above, but under the AEDPA, the federal courts are tasked with deference to the state court of appeals' consideration of this verdict. *Id*.

### 1. Identity

Petitioner alleges that the evidence was insufficient to establish his identity as the perpetrator [Doc. 1 p. 39-41]. Specifically, he alleges that because no one saw him or his vehicle at or leaving the scene, there were no fingerprint matches, no tire print matches[4], no murder weapon was found, and the results of the gun shot residue test on Petitioner were negative, that there is insufficient evidence identifying him as the perpetrator [*Id*.]. Petitioner claims that the

---

[4] Although the Tennessee Bureau of Investigation could not definitively match Petitioner's tires to the tracks, they also did not rule out a match between the two.

only evidence connecting him was the matching shell casings which he attributed to Mr. Janow [*Id.*].

On Direct Appeal, the TCCA applied *Jackson* to find that there was sufficient evidence from which a rational jury could have determined beyond a reasonable doubt that Petitioner was the shooter. *Rogers I*, at *56-62. The court found that Petitioner was linked to the scene by the presence of shells at his home matching that found at the scene, and while Petitioner did provide the jury with an exculpatory explanation, the jury was free to disregard such and the court would not disturb their credibility determination. *Id.*, at *60-61. The court also noted that there was ample circumstantial evidence indicating Petitioner's identity: his stalking and harassment of Mrs. Collett and her family, his frequent calls of the victim, the evidence tending to indicate that Petitioner's car had been at the scene, and proof showing that Petitioner had a 9mm weapon. *Id.* at *61. The court noted that Petitioner's arguments were related to the credibility of witnesses, which it would not reweigh, and relied on the presumption that conflicts be construed in his favor, which is legally incorrect. *Id.* Ultimately, it found that the evidence was sufficient for a rational jury to identify Petitioner as the shooter. *Id.*, at *61-62.

The Court cannot find that the state court's holding was objectively unreasonable. Although Petitioner attempts to align his case with Sixth Circuit cases holding that reasonable speculation will not suffice for guilt beyond a reasonable doubt, there was more linking him to the murder than speculation. *See Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008). Viewing the evidence in the light most favorable to the prosecution, the Petitioner exhibited harassing and threatening behavior to the couple for weeks, even after Mrs. Collett had obtained an order of protection. Additionally, his car had markings consistent with having been at the crime scene, there were shell casings at his home matching those found at the crime scene, and there was

evidence that he possessed a gun that could have been the murder weapon.  The Court cannot find

that no rational juror could have found Petitioner's identity as the perpetrator beyond a reasonable

doubt, or that the TCCA was unreasonable for holding so.  Petitioner is not entitled to habeas relief

on this claim.

## 2.  Premeditation

Petitioner also argues that the evidence was insufficient to establish his premeditation as to

the murder of Mr. Brown [Doc. 1 p. 40-44].  He argues that he made no threats against Mr. Brown,

that calling Mr. Brown the day of the murder actually undercuts the idea of premeditation, and

states that there was no evidence that Petitioner knew prior to arriving at the apartment that the

victim would be there [*Id*. at 43].  He claims that it is equally likely that Petitioner intended only

to scare the couple or was enraged at seeing them together and shot without premeditation [*Id*.].

He supports his claim by saying that it is highly likely that if premeditated, he would have taken a

weapon with which he was more accurate to commit the crime [*Id*. at 44].

On Direct Appeal, the TCCA ruled that by the jury's verdict it was clear that they believed

Petitioner had premeditated the murder of Mr. Brown.  *Rogers I*, at *66-67.  The court noted that

under Tennessee law premeditation could be inferred from "the manner and circumstances of the

killing," or demonstrated through

> the use of a deadly weapon upon an unarmed victim, the particular
> cruelty of the killing, declarations by the defendant of an intent to
> kill, evidence of procurement of a weapon, preparations before the
> killing for concealment of the crime, destruction or secretion of
> evidence of the killing, and calmness immediately after the killing.

*Id*. at *62-63.  The court also said the jury could discern premeditation by establishing motive.  *Id*.

at *63.  The TCCA held that in this case, the jury could have discerned motive from evidence that

Petitioner stalked and harassed Mrs. Collett and exhibited jealousy and harassed the victim after

he began a relationship with Mrs. Collett. *Id*. at *66. Petitioner likewise took pictures of the victim's vehicle in front of Mrs. Collett's house. *Id*. at *67. The TCCA also found that, in the light most favorable to the prosecution, Petitioner stood by Mrs. Collett's bedroom window and saw the couple together and shot. *Id*. The jury could have inferred premeditation from this as well as Petitioner's calm demeanor following the crime and expressed intent to establish an alibi. *Id*. at *68.

The Court cannot find that the TCCA was objectively unreasonable in holding that the evidence was sufficient to support the jury's verdict. There was ample evidence which under Tennessee law could have been used to determine motive and thus premeditation. Petitioner is not entitled to habeas relief on this claim.

### C.  Trial Court Errors

Petitioner alleges that the trial court committed four issues of trial court error or abuse of discretion that ultimately denied his due process rights and his right to a fair trial [Doc. 1 p. 45-67]. He claims that the trial court erred by: (1) failing to suppress the evidence found at Petitioner's home because of the search warrant's deficiencies, (2) allowing only the transcript of the 9-1-1 call not the tape recording, (3) refusing to dismiss the jury foreperson, and (4) admitting photographs of Petitioner's vehicle tires [*Id*.].

To be reviewed by a federal court sitting in habeas, claims must be of a type deemed cognizable on habeas review, and the claims must have been properly presented. Under the AEDPA, Petitioner's claims are only cognizable on habeas review if they allege that a petitioner's confinement violates the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254(a). This means "a federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not

the province of a federal habeas court to reexamine state court determinations on state law questions."). Amongst other claims which are not cognizable, challenges to the admission of evidence will not be grounds for habeas relief "unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) (citing *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)). Further, even the admission of evidence directly implicating the Fourth Amendment is not a proper ground for habeas relief "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("Where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial.").

Not only must petitioners bring appropriate constitutional claims to qualify for habeas relief, those claims must be properly exhausted in the state courts in order to be cognizable. As established above, petitioners must "fairly present" federal claims to the state courts so that the State has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). The standard for fair presentation is not met when claims are presented to state courts only as matters of state law, and such claims are not cognizable in federal habeas proceedings. *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986).

### 1. Warrant Issues

Petitioner claims that the trial court erred in failing to suppress the evidence found at his home because of the many deficiencies in the search warrant rendered it invalid [Doc. 1 p. 46-55]. Specifically, he claims that the affidavit underlying the warrant relied on unsubstantiated,

unsupported information, which either turned out to be clearly false, or as a result of being from a biased witness was not entitled to a presumption of reliability, and that no copy of the search warrant was left with the defendant or at his residence [*Id.*]. The State responds that as a Fourth Amendment claim which has been fully and fairly litigated in state court, it is not a cognizable ground for federal habeas relief [Doc. 15 p. 34-35].

On July 30, 2007, Detective Chris Hall obtained a search warrant to conduct a search of Petitioner's residence. *Rogers I*, at *13. Upon executing the warrant, officers found, among other items, two 9mm cartridges matching the cartridge found at the scene, a camera with a picture of victim's car in front of Mrs. Collett's home, and Petitioner's vehicle that had tires and scratches similar to the markings found at the scene. *Id.* The affidavit seeking the warrant relied on Detective Hall's investigation, including information provided to him by fellow officer Deputy David King and by Mrs. Collett. *Id*. at *21-26.

The information attributed to Deputy King detailed events of June 11, 2007 where Deputy King was at Mrs. Collett's residence investigating several hang-up phone calls when he witnessed Petitioner drive by approximately 100 yards from Mrs. Collett's residence. *Id*. at *23. Deputy King stopped Petitioner, and the information in the affidavit stated that at that time, Petitioner was in possession of a cellular phone and "the number on the phone was identical to the number that had appeared on the [p]hone belonging to Vanessa Rogers[5]" while Deputy King was at her house. *Id*. Although Deputy King did stop Petitioner, who did have a cell phone, the information regarding the matching phone numbers later turned out to be false, as Deputy King was unable to

---

[5] Mrs. Collett is referred to throughout the warrant as Vanessa Rogers, which was her name at the time.

ascertain the number assigned to the phone in Petitioner's possession at the time he pulled Petitioner over. *Id.* at *29-30.

Mrs. Collett supplied much of the information in the affidavit forming the basis for the search warrant. She told Detective Hall that Petitioner was disturbed by their separation and that "this was aggravated by the relationship that Vanessa Rogers had developed with the victim, Gregory Keith Brown." She also provided Detective Hall with information about the Order of Protection she had taken out regarding Petitioner and told him that Petitioner had continued driving back and forth in front of her apartment and calling both her and the victim after the Order of Protection. Finally, Mrs. Collett told Detective Hall about the events of the prior evening, when Ms. Bennett had seen Petitioner on their front porch.

After the warrant was granted on the basis of the above information along with other investigation by Detective Hall, the warrant was left at the jail where Petitioner was being held. *Rogers I*, at 50-51. Petitioner claims that he did not receive it until after the search had taken place. *Id.*

Petitioner challenged each of these alleged deficiencies in a Motion to Suppress the evidence found during the search of his home [Doc. 12-1 p. 34]. The trial court did not grant Petitioner's motion, which Petitioner then challenged on direct appeal. *Id.* at *20. The TCCA applied state law to grant a presumption of correctness to the trial court's holding and concluded that the trial court did not abuse its discretion. *Id.*, at *34-55. The TCCA reasoned that under both federal and state law, no warrant may be issued except upon probable cause, which can be defined as reasonable ground for suspicion, which was satisfied in this case. *Id.*, at *34-35. The TCCA first ruled that Mrs. Collett was a citizen informant in this case, and thus, the information she provided was properly viewed as reliable. *Id.*, at *43. They further stated that even if Mrs. Collett

had not been classified as a citizen informant, the affidavit provided the basis or her knowledge and specifics of the couple's tumultuous relationship, which was corroborated by police investigation. *Id.* at *43-44. Next, the TCCA found that the statement by Deputy King, although false, was not intentionally misleading and was not essential to probable cause. Finally, the TCCA found that under Tennessee law, leaving a copy of the search warrant with prison officials was reasonable.

Federal habeas relief may not be granted on a claim that "evidence obtained in an unconstitutional search and seizure was introduced at trial," "where the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim…" *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). On habeas review, a district court is required to make two inquiries in order to determine whether a petitioner received a "full and fair opportunity:" (1) "whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim," and (2) "whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). The correct analysis then is not of the "adequacy of the procedure actually used to resolve the claim,", or "the accuracy of the state-court's resolution of the claim," but rather whether the prisoner had an adequate avenue to present his claims to the state court. *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013); *Riley*, 674 F.3d at 526.

Petitioner raises no claims that Tennessee had no mechanism through which to raise a Fourth Amendment claim, or that his ability to raise such claims was in fact frustrated. Nor would any such claim be successful here where he was actually able to raise this claim both in his Motion to Suppress and on Direct Appeal, and it was considered by the state courts in both instances. As

such, his claim has been fully and fairly litigated in state court and is not a proper ground for habeas relief.

### 2. 9-1-1 Call Recording

Petitioner alleges that the trial court abused its discretion by failing to allow the recorded tape of the 9-1-1 call Mrs. Collett made the night before the murder, when she claimed Petitioner was on her front porch [Doc. 1 p. 63-64]. The State responds that Petitioner previously raised this claim only under state law, and as such, it is not a ground on which a federal court may issue a writ of habeas corpus [Doc. 15 p. 35-38]. They further contend that to the extent that Petitioner now attempts to raise this as a federal claim, it is procedurally defaulted [*Id.*].[6]

At trial, the parties argued over the admissibility of this evidence. The trial court determined that the transcript of the phone call was admissible under the Tennessee Rules of Evidence, but the tape recording of the call was not. *Rogers III*, at *4. On Direct Appeal, the TCCA determined that this was in error, as the tape recording should have been introduced, but it concluded that the error was ultimately harmless. *Rogers I*, at *80.

This claim raises an issue with the trial court's admission of evidence and as such "may not be questioned in a federal habeas corpus proceeding, unless [it] render[s] the trial so fundamentally unfair as to constitute a denial of federal rights." *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982); *accord Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) ("Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental

---

[6] The facts of this claim are discussed above in Section III(A)(5) and will not be repeated here.

right to a fair trial.")  State court holdings and findings on such claims still enjoy the deference granted by the AEDPA.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner cannot demonstrate that introducing the transcript containing this evidence, rather than a tape of it, in any way denied him a right to a fair trial.  Petitioner was fully able to introduce the substance of this testimony and cross-examine Mrs. Collett, regardless of the format. The substance of this testimony, that Mrs. Collett had not told 9-1-1 that the intruder was Petitioner, is the element of this evidence that was useful to Petitioner's case, not the tone in which she said it.  The Court fails to see how permitting the transcript rather than the recording had any impact, much less rendered Petitioner's trial fundamentally unfair.

### 3. Juror Issues

Petitioner contends that the trial court erred in refusing to dismiss the jury foreperson, who he believes exhibited behaviors indicating she had made a decision about Petitioner's guilt prior to the close of proof, and that as a result he was denied his right to an impartial jury [Doc. 1 p. 64-65].  The State responds that the TCCA correctly found that the trial court was in the best position to assess juror misconduct and that it would not overturn that ruling absent some clear evidence that the judgment was wrong [Doc. 15 p. 38-40].

Petitioner claimed that Juror Peggy Bowman exhibited body language during trial that demonstrated that she believed Petitioner to be guilty before the close of proof.  This was brought to the attention of the trial court twice at trial, who after observing the juror, found nothing unusual in her demeanor and determined it did not have sufficient evidence to determine that she had decided on Petitioner's guilt.  On Direct Appeal, the TCCA found that the trial court was in the best position to assess juror behavior and that it would not overturn the court's finding without some showing that the judgment was incorrect.  *Rogers I*, at *35.

Under the Sixth Amendment, criminal defendants are given a right to an impartial jury. U.S. Const. Amend. VI. The jury "must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992). The question of juror bias is one of fact, and as such will not be disturbed on habeas review unless it was objectively unreasonable, and not simply incorrect. *Dennis v. Mitchell*, 354 F.3d 511, 520 (citing *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *Keith v. Mitchell*, 455 F.3d 662, 669 (6th Cir. 2006). A juror is biased when he or she "has a predisposition against or in favor of the defendant," or "cannot 'conscientiously apply the law and find the facts.'" *Franklin v. Anderson*, 434 F.3d 412, 422 (6th Cir. 2006) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). The petitioner bears the burden of demonstrating that a juror was actually biased. *Phillips v. Bradshaw*, 607 F.3d 199, 223 (6th Cir. 2010).

Petitioner has not presented any clear and convincing evidence that the jury foreperson was actually biased that would allow the Court to second-guess the state court's contrary finding of fact on this claim. The words of Petitioner and his counsel that a juror's body language conveyed her bias will not rebut the presumption of correctness of the finding of the trial court that there was nothing unusual in her demeanor, nor the TCCA's judgment that the trial court did not err in this regard. Petitioner is not entitled to habeas relief on this claim.

### 4. Tire Photographs

Petitioner alleges that the trial court erred when it admitted photographs of Petitioner's vehicle's tires because the prejudicial value of those photographs outweighed any probative value [Doc. 1 p. 66]. The State responds that this claim is procedurally defaulted, and that even were it not, the admission of these photographs into evidence was not in error [Doc. 15 p. 42-44]. The

Court finds that this claim is not cognizable on habeas relief, and thus, Petitioner is not entitled to relief.

At trial, photographs of Petitioner's vehicle's tires were admitted into evidence as exhibits to Detective Hall's testimony. *Rogers* I, at *81. These photographs showed that Petitioner's tires had three longitudinal stripes, like the marks in the mud found near Mrs. Collett's residence. *Id.* The Tennessee Bureau of Investigation's lab was unable to "make an identification" based on the plaster casts and photographs provided by officers, but the photographs were introduced to demonstrate that the tire tread pattern was not inconsistent with the marks found at the scene. *Id.* at *81-82. On Direct Appeal, the TCCA ruled that the inconclusive match went to the weight afforded to the evidence but did not render it inadmissible. *Id.*, at *82.

As with Petitioner's claim regarding the tape recording of Mrs. Collett's 9-1-1 call, this claim raises an issue with the admission of evidence by the trial court. This claim is only cognizable on habeas if Petitioner could demonstrate that it rendered his trial fundamentally unfair. *Harris*, 465 U.S. at 41. The Court does not find that the admission of relevant photographs rendered Petitioner's trial fundamentally unfair. Petitioner is not entitled to habeas relief on this claim.

## IV.      CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## V.      CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be

33

issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Where a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not disagree that Petitioner's counsel was constitutionally effective, that the evidence was sufficient to support his conviction, nor would they find that the trial court made any errors which harmed Petitioner. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**


_____*/s/ Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE